IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>v.<br><br>**PAUL GLISSON, DO;**<br>**ELIZABETH MICHON, CRNP;**<br>**JULIA MURPHY, CRNP; and**<br>**SHEILA STEPHENS, CRNP**<br><br>    **Defendants.** | **Civil Action No. 1:25-cv-00374** |

# COMPLAINT

The United States of America, by and through the United States Attorney for the Southern District of Alabama, alleges as follows:

1.  This is an action for recovery of civil money penalties under the Controlled Substances Act, 21 U.S.C. §§ 801-904 (the "CSA"). The Defendants failed to comply with their legal duties under the CSA.

2.  The CSA states that "[i]t shall be unlawful for any person… to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under this subchapter or subchapter II." 21 U.S.C. § 842(a)(5). The Defendants refused or negligently failed to keep sufficient invoices, receipts, inventories, and records of dispensation of the controlled substances at their clinic. The CSA imposes civil penalties on persons who commit prohibited acts specified in section 842. 21 U.S.C. § 842(c)(1).

1

## JURISDICTION AND VENUE

3.  Pursuant to 21 U.S.C. § 842(c)(1)(A) and 28 U.S.C. § 1355(a), the district courts of the United States have original jurisdiction over actions to recover and enforce penalties under the CSA.

4.  Venue of this action is appropriate in the Southern District of Alabama pursuant to 28 U.S.C. § 1395(a) because the penalties accrued in this district and Defendants are found in this district.

## PARTIES

5.  Plaintiff United States of America ("United States") brings this action on behalf of the Department of Justice, as delegated to the Drug Enforcement Administration ("DEA"), which regulates the distribution of controlled substances under the authority of the CSA.

6.  Defendant Paul Glisson, DO ("Glisson"), at all relevant times hereto, was employed by and operated as the medical director at Southern Rapid Care ("SRC"), located at 25910 Canal Road, Suite D, Orange Beach, Alabama. Glisson was registered with the DEA, pursuant to 21 U.S.C. § 822 and implementing regulations, for the purpose of possessing, distributing, and dispensing Schedule II through V controlled substances, with DEA number FG3231486. Glisson became registered with SRC on January 24, 2020.

7.  Defendant Sheila Stephens ("Stephens") was, at all times relevant hereto, an owner of SRC and served as its director. She was also a certified registered nurse practitioner and worked in that capacity at SRC. Stephens had responsibility and authority for properly maintaining the controlled substance records of SRC, including order forms, invoices, and controlled substance logs. She and her co-defendants were responsible for determining when controlled substances were needed; verifying controlled substance orders received at SRC;

documenting their receipt in the controlled substance logs; taking monthly inventories of controlled substances; and documenting controlled substance inventories after patient infusions. At all times relevant hereto, Stephens had access to the controlled substances kept at SRC.

8. Defendant Elizabeth Michon ("Michon") was, at all times relevant hereto, an owner of SRC. She was also a certified registered nurse practitioner and worked in that capacity at SRC. Michon had responsibility and authority for properly maintaining the controlled substance records of SRC, including order forms, invoices, and controlled substance logs. She and her co-defendants were responsible for determining when controlled substances were needed; verifying controlled substance orders received at SRC; documenting their receipt in the controlled substance logs; taking monthly inventories of controlled substances; and documenting controlled substance inventories after patient infusions. At all times relevant hereto, Michon had access to the controlled substances kept at SRC.

9. Defendant Julie Murphy ("Murphy") was, at all times relevant hereto, an owner of SRC. She was also a certified registered nurse practitioner and worked in that capacity at SRC. Murphy had responsibility and authority for properly maintaining the controlled substance records of SRC, including order forms, invoices, and controlled substance logs. She and her co-defendants were responsible for determining when controlled substances were needed; verifying controlled substance orders received at SRC; documenting their receipt in the controlled substance logs; taking monthly inventories of controlled substances; and documenting controlled substance inventories after patient infusions. At all times relevant hereto, Murphy had access to the controlled substances kept at SRC.

## THE CONTROLLED SUBSTANCE ACT

10. The CSA regulates all handling of controlled substances and makes it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense any controlled substance except as authorized by provisions of the Act itself. 21 U.S.C. § 841(a)(1).

11. The Attorney General is authorized "to promulgate rules and regulations to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances." 21 U.S.C. § 821.

12. Pursuant to the CSA, "[e]very person who manufactures or distributes any controlled substance" and "[e]very person who dispenses, or who proposes to dispense, any controlled substance" is required to obtain a registration from the Attorney General. 21 U.S.C. § 822(a)(1)–(2).

13. The Attorney General has delegated responsibility for registrations under the CSA, as well as certain activities related to CSA enforcement, to the DEA.

14. The CSA sets forth both criminal and civil penalties for those who violate its provisions. 21 U.S.C. §§ 841–865.

15. Among other prohibitions, the CSA makes it unlawful for any person – either a corporation or an individual – "to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required" under the CSA. 21 U.S.C. § 842(a)(5).

16. The CSA likewise makes it unlawful for any person to "negligently to fail to keep a record or make a report under [21 U.S.C. § 830]," 21 U.S.C. § 842(a)(10), which requires reporting of various activities including theft or loss of a controlled substance. *See also* 21 C.F.R. § 1301.76(b).

17. Thus, any person who negligently acts or fails to act with respect to recordkeeping requirements under the CSA is potentially liable for any recordkeeping violations resulting from that negligence.

## FACTUAL ALLEGATIONS

18. At all times relevant hereto, Defendants were required to maintain records for Schedule II-V controlled substances separately from all other records; maintain a biennial inventory of controlled substances; maintain an appropriate record of the amount of Schedule II-V controlled substances received and the date on which they were received; and maintain complete and accurate records of controlled substances received, sold, delivered, or otherwise disposed of, in accordance with 21 U.S.C. § 827(a)(3) and (b) and 21 C.F.R. §§ 1304.04(g), 1304.11(c), 1304.21(a), and 1304.22.

19. On or about August 4, 2021, the DEA received intelligence from Baldwin County Sherriff's Office Narcotics Unit that providers at SRC were prescribing and dispensing controlled substances, specifically testosterone, outside the usual course of professional practice and without a legitimate medical purpose. Testosterone is a Schedule III controlled substance, pursuant to 21 U.S.C. § 812(c) and 21 C.F.R. § 1308.13.

20. As a result of this information, DEA investigators visited SRC on June 7, 2022, and conducted an on-site inspection of records and an audit of controlled substance maintained on site at SRC under Glisson's DEA registration. Glisson was not present during the inspection, but SRC Director of Patient Care Services, Mary Christy Jernigan ("Jernigan"), reached Glisson telephonically and agents identified themselves and explained the purpose of their visit. Glisson

verbally gave permission for the inspection and authorized Jernigan to sign the notice of inspection of controlled premises.[1]

21. Jernigan provided investigators with information and documents related to the operations of SRC and assisted the investigators with the inspection. Jernigan stated that SRC operated as an urgent care center as well as the primary care provider for the City of Orange Beach's employees.

22. Jernigan informed DEA investigators that SRC maintains controlled substances on-site including testosterone, phentermine, zolpidem, clonazepam, and gabapentin for dispensation to City of Orange Beach employees. Morphine and Ativan are maintained for urgent care patients. Jernigan also stated that Glisson has been the medical director of SRC since February of 2020, but is only physically in the office on Friday afternoons.

23. At the inspection, Jernigan explained that controlled substances are secured in three locations: testosterone and Ativan are in a lockbox inside the refrigerator in the medication room; morphine is locked in a safe inside a cabinet at nurse's station; and all other controlled substances are in a safe located in Jernigan's office. Jernigan, Stephens, Murphy, and Michon have access to the safes and lockboxes. Jernigan took an inventory of all the controlled substances on hand at SRC, as witnessed by the DEA investigators.

24. At the inspection, DEA investigators requested copies of SRC's inventories for the controlled substances kept on-hand at SRC. Jernigan was unable to provide investigators with an initial or a biennial inventory.

25. Jernigan provided investigators a monthly inventory for all controlled substances in the safe – clonazepam, diazepam, phentermine, testosterone, and zolpidem tartrate. This

---

[1] This notice is otherwise known as or referred to as the DEA 82 form.

inventory did not contain the drug strength, dosage form, container size, or if the inventory was taken at the beginning or close of business.

26. Jernigan provided investigators with separate inventories for Ativan, testosterone, and morphine. The investigators did not assess any violations for the Ativan, testosterone, and morphine inventories at SRC.

27. At the inspection, DEA investigators requested copies of SRC's records of receipt for the controlled substances kept on-hand at SRC. Jernigan directed DEA investigators to a storage area with numerous boxes on the other side of the clinic and stated that this area is where SRC kept records of receipt (invoices) for controlled substances in drug schedules III-V.

28. Upon opening several boxes, DEA investigators discovered unrelated records such as financial, billing, canceled checks, and patient lab reports. DEA investigators were able to locate several invoices in the boxes that were reviewed however none of the invoices located contained the date received nor quantity of the controlled substance received. Jernigan stated she was unaware this was required and SRC has never documented this information on any invoice for controlled substances.

29. Due to SRC not maintaining the required records, DEA investigators were not able to complete an audit of the controlled substances on June 7, 2022. Subsequently, DEA investigators subpoenaed records from SRC's distributors (Bryant Ranch, Direct RX, McKesson, and Royal Blue Medical).

30. The DEA received 10 invoices from Bryant Ranch for the period of June 2020 through June 2022 documenting 23 itemized purchases of controlled substances.

31. The DEA received 37 invoices from Direct RX for the period of June 2020 through June 2022 documenting 55 itemized purchases of controlled substances.

32. The DEA received 16 invoices from Eagle Pharmacy for the period of June 2020 through June 2022 documenting 16 itemized purchases of controlled substances. Royal Blue Medical contracts with Eagle Pharmacy. Jernigan produced 16 invoices from Eagle Pharmacy the day after the on-site inspection.

33. The DEA received 1 invoice from McKesson for the period of June 2020 through June 2022 documenting 1 itemized purchase of a controlled substance.

34. Based upon the records obtained during the inspection of SRC and records subpoenaed from distributors, DEA investigators recorded the following recordkeeping violations at SRC:

   a. Defendants did not take an initial inventory when Dr. Glisson became medical director at SRC;

   b. Defendants did not take a biennial inventory at SRC;

   c. the monthly inventory for clonazepam, diazepam, phentermine, testosterone, and zolpidem tartrate did not contain the drug strength, dosage form, container size, or if the inventory was taken at the beginning or close of business;

   d. 37 invoices for controlled substances from Direct RX were not provided or readily retrievable, as they were not maintained separately from other records;

   e. 10 invoices for controlled substances from Bryant Ranch were not provided or readily retrievable, as they were not maintained separately from other records;

   f. 1 invoice for a controlled substance from McKesson Pharmacy was not provided or readily retrievable, as it was not maintained separately from other records; and

   g. 64 invoices for schedule III-V controlled substances did not document the date or quantity received; and

      h. SRC did not maintain their invoices and inventory records for controlled substances for a period of at least two years.

35. The DEA investigators were not able to complete an accountability audit of the controlled substances at SRC because of the missing and incomplete records.

36. Glisson, as the medical director of SRC and DEA registrant of record for SRC, entered into a Memorandum of Agreement acknowledging the record keeping violations and agreeing to certain conditions in lieu of administrative actions on October 19, 2022.

## Count I
### Failure to Maintain Records Separately (invoices for controlled substances)

37. The DEA inspection revealed that controlled substance invoices were kept in storage boxes mixed with other records from SRC. SRC was not able to produce the records requested by DEA investigators. Defendants therefore failed to maintain inventories and records of controlled substances listed in schedule III-V separately from other records, as required by 21 U.S.C. § 827(b) and 21 C.F.R. § 1304.04(g).

38. The DEA inspection of subpoenaed distributor records revealed that there were 44 invoices dated from September 3, 2020 to June 2022 for schedule III-V controlled substances that were not maintained separately and readily retrievable by SRC.

39. Pursuant to 21 U.S.C. § 842(a)(5), it is unlawful for any person to refuse or negligently fail to make, keep, or furnish any records or information required to be kept under the Controlled Substance Act. Defendants have violated 21 U.S.C. § 842(a)(5) by failing to keep records of Scheduled III-V controlled substances separately from other records in accordance with 21 U.S.C. § 827(b) and applicable regulations.

40. Pursuant to 21 U.S.C. § 842(c)(1) and 28 C.F.R. 85.5, the United States is entitled to recover from Defendants civil penalties in an amount not to exceed $19,246 for each violation of 21 U.S.C. § 842(a)(5).

## Count II
## Failure to document the amount received or date received

41. Distributors produced 60 invoices dated from September 3, 2020 to June 2022 for controlled substances delivered to SRC. The DEA inspection revealed SRC did not maintain these 60 invoices for schedule III-V controlled substances and did not document the amount of controlled substance received or the date they were received, as required by 21 U.S.C. § 827(a)(3) and 21 C.F.R. § 1304.22.

42. Pursuant to 21 U.S.C. § 842(a)(5), it is unlawful for any person to refuse or negligently fail to make, keep, or furnish any records or information required to be kept under the Controlled Substance Act. Defendants have violated 21 U.S.C. § 842(a)(5) by failing to keep records of the amount of controlled substances received or the date they were received on, in accordance with applicable regulations.

43. Pursuant to 21 U.S.C. § 842(c)(1) and 28 C.F.R. 85.5, the United States is entitled to recover from Defendants civil penalties in an amount not to exceed $19,246 for each violation of 21 U.S.C. § 842(a)(5).

## Count III
## Failure to maintain a biennial inventory

44. The DEA inspection revealed that Defendants did not conduct a biennial inventory as required by 21 U.S.C. § 827(a) and 21 C.F.R. § 1304.11(c).

45. Pursuant to 21 U.S.C. § 842(a)(5), it is unlawful for any person to refuse or negligently fail to make, keep, or furnish any records or information required to be kept under

the Controlled Substance Act. Defendants have violated 21 U.S.C. § 842(a)(5) by failing to take a biennial inventory in accordance with applicable regulations.

46.     Pursuant to 21 U.S.C. § 842(c)(1) and 28 C.F.R. 85.5, the United States is entitled to recover from Defendants civil penalties in an amount not to exceed $19,246 for each violation of 21 U.S.C. § 842(a)(5). See 28 C.F.R. § 85.5.

## Count IV
### Failure to maintain complete and accurate records of receipt and dispensation or other disposition of a controlled substances

47.     The DEA inspection revealed that Defendants had failed to document drug strength, dosage form, container size, or if the inventory was taken at the beginning of business or close of business on the monthly inventories for clonazepam, diazepam, phentermine, testosterone, and zolpidem tartrate as required by 21 U.S.C. § 827(a)(3) and 21 C.F.R. § 1304.11(e).

48.      Pursuant to 21 U.S.C. § 842(a)(5), it is unlawful for any person to refuse or negligently fail to make, keep, or furnish any records or information required to be kept under the Controlled Substance Act. Defendants have violated 21 U.S.C. § 842(a)(5) by failing to take a biennial inventory in accordance with and applicable regulations.

49.     Pursuant to 21 U.S.C. § 842(c)(1) and 28 C.F.R. 85.5, the United States is entitled to recover from Defendants civil penalties in an amount not to exceed $19,246 for each violation of 21 U.S.C. § 842(a)(5).

## Count V
### Failure to maintain records and inventories for two years

50.     The DEA inspection revealed that the Defendants had failed to maintain the required records for a period of two years as required by 21 U.S.C. 827(b) and 21 C.F.R. 1304.04.

51.     Pursuant to 21 U.S.C. § 842(a)(5), it is unlawful for any person to refuse or negligently fail to make, keep, or furnish any records or information required to be kept under the CSA. Defendants have violated 21 U.S.C. § 842(a)(5) by failing to take a biennial inventory in accordance with and applicable regulations.

52.     Pursuant to 21 U.S.C. § 842(c)(1) and 28 C.F.R. 85.5, the United States is entitled to recover from Defendants civil penalties in an amount not to exceed $19,246 for each violation of 21 U.S.C. § 842(a)(5). 28 C.F.R. § 85.5.

WHEREFORE, the United States of America prays that judgment be entered in its favor and against Defendants Paul Glisson, Sheila Stephens, Elizabeth Michon, and Julie Murphy. jointly and severally, for civil penalties of $19,246 for each violation of the CSA and such further relief as the Court may deem proper.

Dated: September 3, 2025

                Respectfully submitted,

                SEAN P. COSTELLO
                UNITED STATES ATTORNEY

By:    *s/Nina Towle Herring*
        Nina Towle Herring
        Assistant United States Attorney
        Nina.herring@usdoj.gov
        63 South Royal Street, Suite 600
        Mobile, Alabama 36602
        Telephone: (251) 415-7142

        *Counsel for Plaintiff United States of America*

Defendants to be Served by U.S. Marshals Service as follows:

Paul Glisson, DO
824 Summer Lake Street
Fairhope, Alabama 36532

Elizabeth Michon, CRNP
22655 Adams Dr.
Robertsdale, Alabama 36567

Julie Murphy, CRNP
4217 Grove Street
Gulf Shores, Alabama 36542

Sheila Stephens, CRNP
26808 Marina Road
Orange Beach, Alabama 36561